POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDY DEAN STEPHENS, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| MAPLEBEAR INC. d/b/a INSTACART, FIDJI SIMO, NICK GIOVANNI, ALAN RAMSAY, APOORVA MEHTA, JEFFREY JORDAN, MEREDITH KOPIT LEVIEN, BARRY MCCARTHY, MICHAEL MORITZ, LILY SARAFAN, FRANK SLOOTMAN, and DANIEL SUNDHEIM, | |
| Defendants. | |

Plaintiff Andy Dean Stephens ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange

1

Commission ("SEC") filings, wire and press releases published by and regarding Maplebear Inc. d/b/a Instacart ("Instacart" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Instacart common stock pursuant and/or traceable to the Offering Documents (defined below) issued in connection with the Company's initial public offering conducted on or about September 19, 2023 (the "IPO" or "Offering"); and/or (b) Instacart securities between September 19, 2023 and October 1, 2023, both dates inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Instacart provides online grocery shopping services to households in North America.  The Company sells and delivers a range of products in the food, alcohol, consumer health, pet care, and ready-made meals categories, in addition to others.  The Company offers its services through a mobile application and website, while also providing software-as-a-service solutions to retailers.

3.      On August 25, 2023, Instacart filed a registration statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on September 18, 2023 (the "Registration Statement").

4.      On September 19, 2023, pursuant to the Registration Statement, Instacart's common stock began publicly trading on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "CART".

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

5.     On September 20, 2023, Instacart filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement (the "Prospectus" and, collectively with the Registration Statement, the "Offering Documents").

6.     Pursuant to the Offering Documents, Instacart and other selling stockholders identified in the Prospectus sold 14.1 million and 7.9 million shares of the Company's common stock to the public, respectively, at the Offering price of $30.00 per share for total proceeds of approximately $400 million and $224 million to Instacart and the selling stockholders, respectively, after applicable underwriting discounts and commissions.

7.     The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.  In addition, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) Instacart had overstated the extent to which online grocery shopping and delivery habits among consumers were accelerating; (ii) Instacart had downplayed the extent of the competition that it faced in the online grocery shopping and delivery market; (iii) accordingly, Defendants overstated the Company's post-IPO growth, business, and financial prospects; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

8.     On September 22, 2023, *Reuters* published an article noting, among other things, that Instacart's stock price was falling after "lukewarm analyst reports" indicated that the Company would struggle from heavy competition.  For example, the article noted that "BTIG analyst Jake Fuller gave Instacart a 'neutral' rating and warned that the company faces heavy competition from DoorDash (DASH.N) and Uber Technologies (UBER.N) in the slowly expanding market of grocery delivery."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

9.      On this news, Instacart's stock price fell $0.65 per share, or 2.12%, to close at $30.00 per share on September 22, 2023.

10.     Then, on October 2, 2023, investment research firm Gordon Haskett initiated coverage of Instacart with a "hold" rating, stating that it "ha[s] doubts that online grocery delivery adoption will continue to materially increase at a time when consumers are becoming increasingly cautious about spending", while similarly citing the competitive environment in the online grocery shopping and delivery market as a headwind to the Company's business.

11.     On this news, Instacart's stock price fell $2.73 per share, or 9.2%, to close at $26.96 per share on October 2, 2023.

12.     As of the time this Complaint was filed, Instacart's common stock continues to trade below the $30.00 per share Offering price, damaging investors.

13.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Instacart's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

14.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

16.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Instacart is headquartered in this Judicial District, Defendants

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

17.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

18.     Plaintiff, as set forth in the attached Certification, acquired Instacart common stock pursuant and/or traceable to the Offering Documents issued in connection with the IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

19.     Defendant Instacart is a Delaware corporation with principal executive offices located at 50 Beale Street, Suite 600, San Francisco, California 94105.  The Company's common stock trades in an efficient market on the NASDAQ under the trading symbol "CART".

20.     Defendant Fidji Simo ("Simo") has served as Instacart's Chief Executive Officer and a Director of the Company at all relevant times.  Defendant Simo has also served as the Chairperson of the Company's Board of Directors since September 2023.  Defendant Simo signed or authorized the signing of the Registration Statement filed with the SEC.

21.     Defendant Simo possessed the power and authority to control the contents of Instacart's SEC filings, press releases, and other market communications.  Defendant Simo was provided with copies of Instacart's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of her positions with Instacart, and her access to material information available to her but not to the public, Defendant Simo knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then

5

materially false and misleading.  Defendant Simo is liable for the false statements and omissions pleaded herein.

22.    Defendants Instacart and Simo are sometimes referred to herein collectively as the "Exchange Act Defendants".

23.    Defendant Nick Giovanni ("Giovanni") has served as Instacart's Chief Financial Officer at all relevant times.  Defendant Giovanni signed or authorized the signing of the Registration Statement filed with the SEC.

24.    Defendant Alan Ramsay ("Ramsay") has served as Instacart's Chief Accounting Officer at all relevant times.  Defendant Ramsay signed or authorized the signing of the Registration Statement filed with the SEC.

25.    Defendant Apoorva Mehta ("Mehta") is Instacart's Co-Founder and served as Instacart's Chairperson until immediately prior to the effectiveness of the Registration Statement.  Defendant Mehta signed or authorized the signing of the Registration Statement filed with the SEC.

26.    Defendant Jeffrey Jordan ("Jordan") has served as a Director of Instacart at all relevant times.  Defendant Jordan signed or authorized the signing of the Registration Statement filed with the SEC.

27.    Defendant Meredith Kopit Levien ("Levien") has served as a Director of Instacart at all relevant times.  Defendant Levien signed or authorized the signing of the Registration Statement filed with the SEC.

28.    Defendant Barry McCarthy ("McCarthy") has served as a Director of Instacart at all relevant times.  Defendant McCarthy signed or authorized the signing of the Registration Statement filed with the SEC.

29. Defendant Michael Moritz ("Moritz") has served as a Director of Instacart at all relevant times. Defendant Moritz signed or authorized the signing of the Registration Statement filed with the SEC.

30. Defendant Lily Sarafan ("Sarafan") has served as a Director of Instacart at all relevant times. Defendant Sarafan signed or authorized the signing of the Registration Statement filed with the SEC.

31. Defendant Frank Slootman ("Slootman") has served as a Director of Instacart at all relevant times. Defendant Slootman signed or authorized the signing of the Registration Statement filed with the SEC.

32. Defendant Daniel Sundheim ("Sundheim") has served as a Director of Instacart at all relevant times. Defendant Sundheim signed or authorized the signing of the Registration Statement filed with the SEC.

33. Defendants Simo, Giovanni, Ramsay, Mehta, Jordan, Levien, McCarthy, Moritz, Sarafan, Slootman, and Sundheim are sometimes referred to herein collectively as the "Individual Defendants".

34. As directors, executive officers, and/or major shareholders of the Company, the Individual Defendants participated in the solicitation and sale of Instacart securities in the IPO for their own benefit and the benefit of Instacart. The Individual Defendants were key members of the IPO working group and executives of Instacart who pitched investors to purchase the shares sold in the IPO, including in IPO road shows.

35. Instacart and the Individual Defendants are sometimes referred to herein collectively as "Defendants".

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

2

## SUBSTANTIVE ALLEGATIONS

### Background

36.     Instacart provides online grocery shopping services to households in North America.  The Company sells and delivers a range of products in the food, alcohol, consumer health, pet care, and ready-made meals categories, in addition to others.  The Company offers its services through a mobile application and website, while also providing software-as-a-service solutions to retailers.

37.     On August 25, 2023, Instacart filed the Registration Statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on September 18, 2023.

38.     On September 19, 2023, pursuant to the Registration Statement, Instacart's common stock began publicly trading on the NASDAQ under the ticker symbol "CART".

39.     On September 20, 2023, Instacart filed the Prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement.

40.     Pursuant to the Offering Documents, Instacart and other selling stockholders identified in the Prospectus sold 14.1 million and 7.9 million shares of the Company's common stock to the public, respectively, at the Offering price of $30.00 per share for total proceeds of approximately $400 million and $224 million to Instacart and the selling stockholders, respectively, after applicable underwriting discounts and commissions.

### Materially False and Misleading Statements Issued in the Offering Documents

41.     The Offering Documents contained a letter from Defendant Simo (the "IPO Letter"), which indicated to investors that online grocery orders and attendant deliveries were an accelerating, ongoing trend that Instacart was uniquely positioned to capitalize on, stating, in relevant part:

**As I write this, a massive digital transformation is underway in the grocery industry.** Grocery is the largest retail category and represents a $1.1 trillion industry in the United

8

States alone. But only 12% of grocery sales are made online today.[] As even more people shop online, online penetration could double or more over time.[]

This shift is being driven, in large part, by consumer expectations growing more diverse and complex. We might be able to wait a couple of hours for our weekly shop but need popcorn in 30 minutes for an impromptu family movie night. Sometimes we want to buy groceries on our phones and sometimes in the store. We want grocers to understand our tastes and preferences and offer us a seamless, personalized experience everywhere.

\* \* \*

With the business of grocery changing so quickly, many retailers need a trusted partner to help them navigate this digital transformation so that they can drive success both online and in-store and serve their customers better — in all of the ways they choose to shop. It's especially important because their competitors — from established tech platforms to new startup disruptors — are trying to lure customers away from traditional grocers. If the neighborhood grocer who has been serving their community for decades can't find an edge, they may not be able to keep up.

That's where we come in.

(Emphasis in original.)

42.     With further respect to the purported shift in consumer preferences to purchase groceries online and have them delivered, the Offering Documents stated, in relevant part:

In 2022, only 12% of U.S. grocery shopping took place online . . . . Over the past three years, this spend shifted from offline to online at an accelerated pace. Online grocery penetration took 10 years to triple from 1% of total grocery sales in 2009[] to 3% in 2019 and just three years to quadruple to 12% in 2022.[] Market penetration could double or more over time.[]

For grocery retailers, this means that online success is critical, and all grocers from large national players to local mainstays must prepare for a future where all aspects of their business, including their stores, will be improved through technology . . . . Grocery retail is characterized by diverse consumer behaviors, complex inventory management and fulfillment, lack of integrated omni-channel data, a shortage of technology that is custom-built for online grocery, a disaggregated supply chain, and a low operating margin. Before Instacart, grocery retailers did not have access to a unified technology solution to manage eCommerce, fulfillment, in-store, ads and marketing, and insights. Instacart is solving this problem.

43.     Indeed, the Offering Documents represented that "[s]atisfied customers will continue to order on Instacart", that "[l]ower fees make ordering online more appealing for customers, resulting in a

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

higher frequency of usage", and that "[w]e will continue to help retail partners capture new customers as consumer behaviors and preferences shift."

44.     The IPO Letter also downplayed Instacart's competition in the online grocery shopping and delivery market, representing that Instacart "now deliver[s] the best consumer online grocery experience anywhere" and that retail partners, "by partnering with Instacart, . . . can have the same technology edge as tech giants and startups[.]"

45.     The IPO Letter further downplayed Instacart's competition by stating, in relevant part:

> Today, Instacart partners with more than 1,400 national, regional, and local retail banners across more than 80,0003 stores that represent more than 85% of the U.S. grocery industry.[] Millions of households depend on us and our partners for their grocery needs.[] We power tens of billions of dollars in annual sales for retailers,[] which makes Instacart the leading grocery technology company in North America.[] Our GTV [gross transaction value], representing the online sales we power for all of our retail partners, grew at a compound annual growth rate of 80% between 2018 and 2022, compared to 50% for the overall online grocery market and 1% for offline grocery.[] We have demonstrated our ability to help our retail partners drive strong growth and stay competitive in a complex and increasingly digital industry.

46.     Moreover, in discussing Instacart's purported "strengths" that differentiated it from its competitors, the Offering Documents stated, *inter alia*, that "more than 1,400 national, regional, and local retail banners[] that collectively represent more than 85% of the U.S. grocery industry partner with Instacart", which "[w]e believe . . . represents the broadest selection of grocers on a marketplace in North America, providing customers with a superior online grocery shopping experience"; that "[b]ecause we do not own inventory, we do not compete with our retail partners", which "[w]e believe . . . puts us in a unique position to foster greater trust between grocers and Instacart, making us the preferred technology partner"; that "[w]hen brands advertise with us, they can reach their target audience more efficiently and at greater scale than is possible through other online channels"; that Instacart "help[s] retailers serve all use cases of grocery, unlike other players that tend to focus on serving a particular use case"; that, "[b]ecause we serve this breadth of use cases, we are a better partner to retailers by helping them address

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

consumer needs and drive engagement and a better partner to brands by creating more diverse and actionable advertising opportunities"; and that "[w]ith our unique customer data and insights, we provide differentiated analytics for brands"; all of which further served to downplay the Company's competition in the online grocery shopping and delivery market.

47.     Notwithstanding the foregoing, the Offering Documents contained generic, boilerplate risk warnings that purported to warn investors about risks related to Instacart's competition that "may" occur under various potential circumstances, stating, *inter alia*:

> ***The markets in which we participate are highly and increasingly competitive, with well-capitalized and better-known competitors, some of which are also partners. If we are unable to compete effectively, our business and financial prospects would be adversely impacted.***

* * *

> [W]hile we work to expand further in the United States and Canada and potentially enter international markets, and introduce new offerings across a range of industries, ***many of our competitors remain focused on a limited number of products or on a narrow geographic scope***, allowing them to develop specialized expertise and employ resources in a more targeted manner than we do. As we and our competitors introduce new offerings, and as existing offerings evolve, we expect to become subject to additional competition. ***If*** we are unable to offer comparable or superior offerings, our business ***may*** be adversely affected. In addition, our competitors ***may*** adopt certain of our features, or ***may*** adopt innovations that consumers value more highly than ours, which would render our offerings less attractive or reduce our ability to differentiate our offerings.

> Many of our competitors are well-capitalized and are able to offer discounted or free services, shopper incentives, consumer discounts and promotions, innovative products and offerings, and alternative pricing models, which ***may*** be more attractive to consumers, retailers, brands, or shoppers than those that we offer. In addition, we ***may*** not be able to effectively compete with service offerings from vertically integrated competitors, such as Amazon or Drizly, which control both the brick-and-mortar retailer and online fulfillment technology. Certain brick-and-mortar retailers that have their own digital offering, such as Walmart, also have significant size, scale, geographic, and shopper base advantages, which ***may*** allow them to grow online GTV or capture increasing share of the online grocery market more effectively and at a faster rate than us. Competitors ***may*** also offer fulfillment options from our retail partners, despite having no formal engagement with such retailers. Further, some of our current or potential competitors have, and ***may*** in the future continue to have, greater resources and access to larger consumer and shopper bases in a particular geographic area. In addition, our competitors in certain geographies enjoy substantial competitive advantages, such as greater brand recognition, longer operating histories,

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

larger marketing budgets, better localized knowledge, and/or fewer regulatory challenges. Smaller competitors **may** be more nimble at anticipating and meeting changing market dynamics. As a result, such competitors **may** be able to respond more quickly and effectively than us in such markets to new or changing opportunities, technologies, consumer preferences, regulations, or standards, which **may** render our offerings less attractive.

\* \* \*

For all of these reasons, we **may** not be able to compete successfully against our current and future competitors. Our inability to compete effectively would have an adverse effect on our ability to acquire new customers, retailers, and brand partners or increase the engagement of our existing customers, retailers, and brand partners, or would otherwise harm our business, financial condition, and results of operations.

(First emphasis in original.)  Plainly, the foregoing risk warnings were generic, catch-all provisions that were not tailored to Instacart's actual known risks regarding its competition in the online grocery shopping and delivery market.  Moreover, these risks were simultaneously downplayed by the Offering Documents' assertion in these same risk warnings that Instacart's competitors only focus on a "limited number of products" or a "narrow geographic scope".

48.     The statements referenced in ¶¶ 41-47 were materially false and misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.  Specifically, the Offering Documents made false and/or misleading statements and/or failed to disclose that: (i) Instacart had overstated the extent to which online grocery shopping and delivery habits among consumers were accelerating; (ii) Instacart had downplayed the extent of the competition that it faced in the online grocery shopping and delivery market; (iii) accordingly, Defendants overstated the Company's post-IPO growth, business, and financial prospects; and (iv) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**Materially False and Misleading Statements Issued During the Class Period**

49.     The Class Period begins on September 19, 2023, when Instacart's common stock began publicly trading on the NASDAQ pursuant to the materially false or misleading statements or omissions in the Offering Documents, as referenced in ¶¶ 41-47, *supra*.

50.     Also on September 19, 2023, Instacart issued a press release, entitled "Stock Up Your CART! A Letter from Instacart CEO Fidji Simo", which contained the same statements as referenced in ¶¶ 41 and 44-45, *supra*, wherein Defendant Simo indicated to investors that online grocery orders were an accelerating, ongoing trend that Instacart was uniquely positioned to capitalize on, while downplaying the Company's competition in the online grocery shopping and delivery market.

51.     The statements referenced in ¶¶ 49-50 were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) Instacart had overstated the extent to which online grocery shopping and delivery habits among consumers were accelerating; (ii) Instacart had downplayed the extent of the competition that it faced in the online grocery shopping and delivery market; (iii) accordingly, Defendants overstated the Company's post-IPO growth, business, and financial prospects; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

52.     On September 22, 2023, *Reuters* published an article during intraday trading hours, entitled "Arm and Instacart add to losses after lukewarm analyst reports", stating, in relevant part:

> Shares of . . . Instacart deepened their recent losses on Friday after analysts gave lukewarm ratings to [Instacart] that recently held [a] highly anticipated initial public offering[].

* * *

13

Case 5:24-cv-00465-EJD   Document 1   Filed 01/25/24   Page 14 of 24

Grocery delivery app Instacart (CART.O), formally known as Maplebear, fell 2.1% to $30.02, marginally above the $30 price set in its IPO on Monday.

* * *

In a client note, BTIG analyst Jake Fuller gave Instacart a "neutral" rating and warned that the company faces heavy competition from DoorDash (DASH.N) and Uber Technologies (UBER.N) in the slowly expanding market of grocery delivery.

53.     On this news, Instacart's stock price fell $0.65 per share, or 2.12%, to close at $30.00 per share on September 22, 2023.

54.     Then, on October 2, 2023, investment research firm Gordon Haskett initiated coverage of Instacart with a "hold" rating, citing decreased consumer spending and competition as headwinds to the Company's business.  In an article entitled "Instacart Falls; Gordon Haskett Cites Headwinds for Hold Rating", *Bloomberg* reported, in relevant part:

Grocery-delivery giant Instacart falls as much as 7.9% Monday to its lowest level since going public after Gordon Haskett initiated coverage of the stock with a hold rating and $31 price target, citing headwinds ahead.

The firm sees limited multiple expansion opportunity as Instacart's margin projections — which are slightly better than peers — won't be enough to offset concerns in the industry[.]

We "have doubts that online grocery delivery adoption will continue to materially increase at a time when consumers are becoming increasingly cautious about spending," analyst Robert Mollins wrote[.]

Says competitive encroachment is also a concern for Instacart . . . .

Sees potential risk of Instacart+ members leaving for programs that offer "more services and better value"[.]

Says that there are too many risks and not enough catalysts to get investors excited about Instacart[.]

55.     On this news, Instacart's stock price fell $2.73 per share, or 9.2%, to close at $26.96 per share on October 2, 2023.

56.     As of the time this Complaint was filed, Instacart's common stock continues to trade below the $30.00 per share Offering price, damaging investors.

14

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

57.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Instacart's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

58.     During the Class Period, the Exchange Act Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, the Exchange Act Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

59.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Instacart common stock in the IPO or purchased Instacart common stock thereafter in the stock market pursuant and/or traceable to the Company's Offering Documents issued in connection with the IPO; and/or (b) Instacart securities during the Class Period; and were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

60.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Instacart securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by

Instacart or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

61.      Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

62.      Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

63.      Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public in the Offering Documents for the IPO, or during the Class Period, misrepresented material facts about the business, operations and management of Instacart;

- whether the Individual Defendants negligently prepared the Offering Documents for the IPO and, as a result, the Offering Documents contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation;

- whether Defendant Simo caused Instacart to issue false and misleading financial statements during the Class Period;

- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Instacart securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

64.     A  class  action  is  superior  to  all  other  available  methods  for  the  fair  and  efficient adjudication  of  this  controversy  since  joinder  of  all  members  is  impracticable.    Furthermore,  as  the damages  suffered  by  individual  Class  members  may  be  relatively  small,  the  expense  and  burden  of individual  litigation  make  it  impossible  for  members  of  the  Class  to  individually  redress  the  wrongs  done to  them.    There  will  be  no  difficulty  in  the  management  of  this  action  as  a  class  action.

65.     Plaintiff  will  rely,  in  part,  upon  the  presumption  of  reliance  established  by  the  fraud-on-the-market  doctrine  in  that:

- Defendants  made  public  misrepresentations  or  failed  to  disclose  material  facts during  the  Class  Period;

- the  omissions  and  misrepresentations  were  material;

- Instacart  securities  are  traded  in  an  efficient  market;

- the  Company's  shares  were  liquid  and  traded  with  moderate  to  heavy  volume during  the  Class  Period;

- the  Company  traded  on  the  NASDAQ  and  was  covered  by  multiple  analysts;

- the  misrepresentations  and  omissions  alleged  would  tend  to  induce  a  reasonable investor  to  misjudge  the  value  of  the  Company's  securities;  and

- Plaintiff  and  members  of  the  Class  purchased,  acquired  and/or  sold  Instacart securities  between  the  time  the  Defendants  failed  to  disclose  or  misrepresented material  facts  and  the  time  the  true  facts  were  disclosed,  without  knowledge  of  the omitted  or  misrepresented  facts.

66.     Based  upon  the  foregoing,  Plaintiff  and  the  members  of  the  Class  are  entitled  to  a presumption  of  reliance  upon  the  integrity  of  the  market.

67.     Alternatively,  Plaintiff  and  the  members  of  the  Class  are  entitled  to  the  presumption  of reliance  established  by  the  Supreme  Court  in  *Affiliated  Ute  Citizens  of  the  State  of  Utah  v.  United  States*, 406  U.S.  128,  92  S.  Ct.  2430  (1972),  as  Defendants  omitted  material  information  in  their  Class  Period statements  in  violation  of  a  duty  to  disclose  such  information,  as  detailed  above.

## COUNT I

### (Violations of Section 11 of the Securities Act Against All Defendants)

68.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

69.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against all Defendants.

70.     The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

71.     Instacart is the registrant for the IPO.  Defendants were responsible for the contents and dissemination of the Offering Documents.

72.     As issuer of the shares, Instacart is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Documents.

73.     None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

74.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

75.     Plaintiff acquired Instacart shares pursuant and/or traceable to the Offering Documents for the IPO.

76.     Plaintiff and the Class have sustained damages.  The value of Instacart securities has declined substantially subsequent to and because of Defendants' violations.

**COUNT II**

**(Violations of Section 15 of the Securities Act Against the Individual Defendants)**

77.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

78.     This Count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

79.     The Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Instacart within the meaning of Section 15 of the Securities Act.  The Individual Defendants had the power and influence and exercised the same to cause Instacart to engage in the acts described herein.

80.     The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

81.     By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

**COUNT III**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants)**

82.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

83.     This Count is asserted against the Exchange Act Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

84.     During the Class Period, the Exchange Act Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and

the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Instacart securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Instacart securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

85.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Exchange Act Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Instacart securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Instacart's finances and business prospects.

86.     By virtue of their positions at Instacart, the Exchange Act Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Exchange Act Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Exchange Act Defendants.  Said acts and omissions of the Exchange Act Defendants were committed willfully or with reckless disregard for

the truth.  In addition, each of the Exchange Act Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

87.     Information showing that the Exchange Act Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Exchange Act Defendants' knowledge and control.  As the senior manager and/or director of Instacart, Defendant Simo had knowledge of the details of Instacart's internal affairs.

88.     Defendant Simo is liable both directly and indirectly for the wrongs complained of herein.  Because of her positions of control and authority, Defendant Simo was able to and did, directly or indirectly, control the content of the statements of Instacart.  As an officer and/or director of a publicly-held company, Defendant Simo had a duty to disseminate timely, accurate, and truthful information with respect to Instacart's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases, and public statements, the market price of Instacart securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Instacart's business and financial condition which were concealed by the Exchange Act Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Instacart securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by the Exchange Act Defendants, and were damaged thereby.

89.     During the Class Period, Instacart securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Exchange Act Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Instacart securities at prices artificially inflated by the Exchange Act Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said

21

securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Instacart securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Instacart securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

90.    By reason of the conduct alleged herein, the Exchange Act Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

91.    As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## <u>COUNT IV</u>

### (Violations of Section 20(a) of the Exchange Act Against Defendant Simo)

92.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

93.    During the Class Period, Defendant Simo participated in the operation and management of Instacart, and conducted and participated, directly and indirectly, in the conduct of Instacart's business affairs.  Because of Defendant Simo's senior positions, she knew the adverse non-public information about Instacart's misstated prospects and false financial statements.

94.    As an officer and/or director of a publicly owned company, Defendant Simo had a duty to disseminate accurate and truthful information with respect to Instacart's financial condition and results of operations, and to correct promptly any public statements issued by Instacart which had become materially false or misleading.

95.     Because of her positions of control and authority as a senior officer and/or director, Defendant Simo was able to, and did, control the contents of the various reports, press releases, and public filings which Instacart disseminated in the marketplace during the Class Period concerning Instacart's results of operations.  Throughout the Class Period, Defendant Simo exercised her power and authority to cause Instacart to engage in the wrongful acts complained of herein.  Defendant Simo, therefore, was a "controlling person" of Instacart within the meaning of Section 20(a) of the Exchange Act.  In this capacity, Defendant Simo participated in the unlawful conduct alleged which artificially inflated the market price of Instacart securities.

96.     Defendant Simo, therefore, acted as a controlling person of Instacart.  By reason of her senior management positions and/or being a director of Instacart, Defendant Simo had the power to direct the actions of, and exercised the same to cause, Instacart to engage in the unlawful acts and conduct complained of herein.  Defendant Simo exercised control over the general operations of Instacart and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

97.     By reason of the above conduct, Defendant Simo is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Instacart.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

1

D.      Awarding such other and further relief as this Court may deem just and proper.

2

## DEMAND FOR TRIAL BY JURY

3

Plaintiff hereby demands a trial by jury.

4

Dated:  January 25, 2024                                   Respectfully submitted,

5

6                                                          POMERANTZ LLP

7                                                          By: */s/ Jennifer Pafiti*
                                                           Jennifer Pafiti (SBN 282790)
8                                                          1100 Glendon Avenue, 15th Floor
                                                           Los Angeles, CA 90024
9                                                          Telephone: (310) 405-7190
                                                           jpafiti@pomlaw.com
10

11                                                         POMERANTZ LLP
                                                           Jeremy A. Lieberman
12                                                         (*pro hac vice* application forthcoming)
                                                           J. Alexander Hood II
13                                                         (*pro hac vice* application forthcoming)
                                                           600 Third Avenue, 20th Floor
14                                                         New York, New York 10016
                                                           Telephone: (212) 661-1100
15                                                         Facsimile: (917) 463-1044
                                                           jalieberman@pomlaw.com
16                                                         ahood@pomlaw.com
17

18                                                         *Attorneys for Plaintiff*

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS