BORIS FELDMAN, State Bar No. 128838
boris.feldman@freshfields.com
DORU GAVRIL, State Bar No. 282309
doru.gavril@freshfields.com
EUNICE LEONG, State Bar No. 320499
eunice.leong@freshfields.com
OLIVIA ROSEN, State Bar No. 340120
olivia.rosen@freshfields.com
IAN GOOD, State Bar No. 348142
ian.good@freshfields.com
FRESHFIELDS BRUCKHAUS DERINGER US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250

*Attorneys for Defendants MapleBear Inc. d/b/a
Instacart, Fidji Simo, Nick Giovanni, Alan Ramsay,
Apoorva Mehta, Jeffrey Jordan, Meredith Kopit
Levien, Barry McCarthy, Michael Moritz, Lily
Sarafan, Frank Slootman, and Daniel Sundheim*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ANDY DEAN STEPHENS, Individually and on Behalf of All Others Similarly Situated, | Case No.: 5:24-cv-00465-EJD |
| Plaintiff, | **DEFENDANTS' OBJECTION TO IMPROPER STIPULATION** |
| v. | |
| MAPLEBEAR INC. d/b/a INSTACART, FIDJI SIMO, NICK GIOVANNI, ALAN RAMSAY, APOORVA MEHTA, JEFFREY JORDAN, MEREDITH KOPIT LEVIEN, BARRY MCCARTHY, MICHAEL MORITZ, LILY SARAFAN, FRANK SLOOTMAN, and DANIEL SUNDHEIM, | |
| Defendants. | |

DEFS' OBJECTION TO STIP
CASE NO. 5:24-cv-00465-EJD

**INTRODUCTION**

Defendants object to the improper process by which James Cheng ("Cheng") and Carlo J. Viscusi ("Viscusi"), two Lead Plaintiff applicants ("Movants"), have attempted to divest the Court of authority over lead plaintiff selection and to enter a "Stipulation" appointing Co-Lead Plaintiffs (ECF 40), as to which Defendants are not party.

Movants have tried to extinguish the competition that had broken out among them by mooting competing motions. Congress has assigned the selection of lead plaintiffs, not to competing candidates, but to the Court. 15 U.S.C. § 78u-4(a)(3)(B)(i). The Private Securities Litigation Reform Act of 1995 ("PSLRA") "protects investors who join class actions against lawyer-driven lawsuits by giving control of the litigation to lead plaintiffs with substantial holdings of the securities of the issuer." H.R. Rep. No. 104-369, at 32 (1995) (Conf. Rep.). It provides a detailed process for courts to analyze and appoint the most adequate lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). The "Stipulation" thwarts that process.

Defendants oppose co-appointment of two unaffiliated, non-institutional investors who, a few weeks prior, submitted competing applications. Defendants take no position as to whom (if anyone) the Court ultimately chooses as Lead Plaintiff. But resolving the pending Lead Plaintiff motions on their merits as Congress mandates is the proper process. Stipulating them away via a backroom deal is not. Defendants thus respectfully suggest that the Court reject the Stipulation and either (1) resolve the competing Lead Plaintiff motions under the PSLRA as filed or (2) require Movants to proffer specific, non-conclusory information, supported by declarations, explaining their pre-litigation relationship and why a co-leadership structure is necessary.

**ARGUMENT**

**I.    Courts In This Circuit Reject Attempts by Plaintiffs to Subvert the PSLRA**

"[T]he clear consensus in our district is that a group of investors who had no pre-existing relationship with one another, and whose relationship and group status were forged only by a lawyer, is not appropriate to be lead plaintiff." *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835–36 (N.D. Cal. 2019) ("The plaintiffs and not the lawyers call the shots in securities class actions."). Courts have identified several risks with such grouping, including (i) lawyer-driven

1

litigation;[1] (ii) dysfunctional case leadership dynamics;[2] (iii) reduced incentives for any group member to carry out lead plaintiff duties;[3] and (iv) duplicated efforts and increased attorney fees.[4]

These concerns are magnified here: **This is not the first time that a court has rejected a stipulated "group" put forth by Levi & Korsinksy and Pomerantz LLP.**  In *Melucci v. Corcept Therapeutics, Inc.*, then-District Judge Koh denied plaintiffs' joint stipulation appointing themselves lead plaintiffs and approving Levi & Korsinsky and Pomerantz LLP as co-lead counsel.  2019 U.S. Dist. LEXIS 242328, at *3 (N.D. Cal. July 2, 2019).  Judge Koh stated: "In the interest of a cost-effective resolution of the instant case, the Court finds it excessive to appoint two law firms and two co-lead Plaintiffs in this single case." *Id.*  The prior relationship between these two firms suggests that lawyers, not Movants, are attempting to "call the shots in [this] securities class action[]." *Stitch Fix*, 393 F. Supp. 3d at 836.

## II.    Plaintiffs Have Not Met Their Burden to Demonstrate Rule 23 Compliance

A proposed group bears the "burden" of demonstrating compliance with Rule 23.  *Markette v. Xoma Corp.*, 2016 U.S. Dist. LEXIS 63701, at *21 (N.D. Cal. May 13, 2016).  In *Markette*, a group with "no pre-existing litigation relationship" sought lead plaintiff appointment by declaring that "they would actively participate in the litigation and communicate with their counsel." *Id.* at 28.  Judge Gilliam rejected their "barebones declaration": "[It said] nothing about [the movants'] level of sophistication, the structure of decision-making in their group, or whether the investors are the true movants as opposed to their counsel." *Id.*; *see also Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *28 (rejecting "conclusory declaration" with "little or no substance").  As in *Markette*, Movants' mere assertion that co-appointment "is in the class's best interest" does not suffice.  ECF 40-1 ¶ 6.

---

[1] *See Eichenholtz v. Verifone Holdings, Inc.*, 2008 U.S. Dist. LEXIS 64633, at *25 (N.D. Cal. Aug. 22, 2008) ("[To] ignor[e] the basis of the group formation . . . undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven litigation").

[2] *See In re Vaxgen Sec. Litig.*, 2004 U.S. Dist. LEXIS 29812, at *14–15 (N.D. Cal. Apr. 14, 2004) (group lead plaintiff applicants "offer[ed] no further reasons for why it would be beneficial to the class for them to collectively act as lead plaintiff").

[3] *See Isaacs v. Musk*, 2018 U.S. Dist. LEXIS 200717, at *14 (N.D. Cal. Nov. 27, 2018) (rejecting "artificial group" because "although [the members] suggest that they will be able to work together well . . . there is nothing concrete to back that up").

[4] *See Haideri v. Jumei Int's Holding, Ltd.*, 2020 U.S. Dist. LEXIS 162510, at *10 (N.D. Cal. Sept. 4, 2020) ("appoint[ing] [] lawyer-engineered groups may . . . 'generat[e] a flurry of otherwise pointless activity that adds nothing to the prompt and fair resolution of disputes'").

2

DEFS' OBJECTION TO STIP
CASE NO. 5:24-cv-00465-EJD

The Stipulation provides no terms between Movants and the law firms to ensure that the putative class's interests will be best served. Absent these specifics, Movants' assertion that "[t]hrough our oversight, we believe and expect our counsel will litigate this case in a zealous and efficient manner" holds little value. ECF 40-1 ¶ 8; *see Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *28 ("the declaration does not . . . clarify how the group will tackle the massive coordination and strategic issues that are certain to arise in this litigation"). The Stipulation does not explain why Movants' differing losses under the Securities Act of 1933 and the Securities Exchange Act of 1934 make their dual appointments necessary to provide "the most comprehensive representation possible." ECF 40-1 ¶ 4. It fails to describe how a CEO from Eastvale, California, and a union contractor from Schenectady, New York (ECF 40-1 ¶ 1–2), "came to know of each others' existence," suggesting they were introduced by counsel. *Crihfield v. CytRx Corp.*, 2016 U.S. Dist. LEXIS 181615, at *13 (C.D. Cal. Oct. 26, 2016). It provides only that Movants participated in a single conference call and "have each other's contact information." ECF 40-1 ¶ 7; *see Stitch Fix*, 393 F. Supp. 3d at 836 (rejecting allegations that candidates "exchanged a few calls and emails with each other"). Movants both assert their "willing[ness] to fulfill [lead plaintiff] responsibilities," which begs the question why redundancy is necessary. ECF 41-1 ¶¶ 2, 3.

### III.   Plaintiffs' Coalition Disguises Deficiencies in Cheng's Standing

The Stipulation attempts to paper over Cheng's standing issues. Cheng, with the greater alleged losses of $185,231.75, sold all his shares five days *before* the end of the class period. ECF 28, ECF 28-2. But if "the purchaser s[old] the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). A putative class "may not include individuals who purchased and sold [] stock prior to any corrective disclosure by the company," as Cheng did. *In re CornerStone Propane Partners,* 2006 U.S. Dist. LEXIS 25819, at *31 (N.D. Cal. May 3, 2006).

### CONCLUSION

The pending Lead Plaintiff motions should therefore be decided on the briefs, or Movants should be required to submit sufficient evidence to enable a determination as to the appropriateness of the proposed co-Lead Plaintiff appointment.

3

DEFS' OBJECTION TO STIP
CASE NO. 5:24-cv-00465-EJD

Respectfully submitted,

Dated: April 12, 2024

FRESHFIELDS BRUCKHAUS DERINGER US LLP

By: /s/ *Boris Feldman*
        Boris Feldman

*Attorneys for Defendants MapleBear Inc. d/b/a Instacart, Fidji Simo, Nick Giovanni, Alan Ramsay, Apoorva Mehta, Jeffrey Jordan, Meredith Kopit, Levien, Barry McCarthy, Michael Moritz, Lily Sarafan, Frank Slootman, and Daniel Sundheim*

4

DEFS' OBJECTION TO STIP
CASE NO. 5:24-cv-00465-EJD