BORIS FELDMAN, State Bar No. 128838
boris.feldman@freshfields.com
DORU GAVRIL, State Bar No. 282309
doru.gavril@freshfields.com
ELISE LOPEZ, State Bar No. 324199
elise.lopez@freshfields.com
OLIVIA ROSEN, State Bar No. 340120
olivia.rosen@freshfields.com
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250

ABYGAIL KRITTA (*pro hac vice*)
abby.kritta@freshfields.com
FRESHFIELDS US LLP
175 Greenwich Street
New York, NY 10007
Telephone: (212) 277-4000

*Attorneys for Defendants Maplebear Inc. d/b/a
Instacart, Fidji Simo, Nick Giovanni, Alan Ramsay,
Apoorva Mehta, Jeffrey Jordan, Meredith Kopit
Levien, Barry McCarthy, Michael Moritz, Lily
Sarafan, Frank Slootman, and Daniel Sundheim*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANDY DEAN STEPHENS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MAPLEBEAR INC. d/b/a INSTACART, FIDJI SIMO, NICK GIOVANNI, ALAN RAMSAY, APOORVA MEHTA, JEFFREY JORDAN, MEREDITH KOPIT LEVIEN, BARRY MCCARTHY, MICHAEL MORITZ, LILY SARAFAN, FRANK SLOOTMAN, and DANIEL SUNDHEIM, GOLDMAN SACHS & CO. LLC; J.P. MORGAN SECURITIES LLC; BOFA SECURITIES, INC.; BARCLAYS CAPITAL INC.; CITIGROUP GLOBAL MARKETS INC.; ROBERT W. BAIRD & CO. | Case No.: 5:24-cv-00465-EJD<br><br>**INSTACART DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>Date: January 30, 2025<br>Time: 9 AM<br>Location: Courtroom 4 – 5th Floor<br>Judge: Hon. Edward J. Davila |

INSTACART DEFS' REPLY ISO
MOTION TO DISMISS
CASE NO. 5:24-cv-00465-EJD

INCORPORATED; CITIZENS JMP SECURITIES, LLC; LIONTREE ADVISORS LLC; OPPENHEIMER & CO. INC.; PIPER SANDLER & CO.; SOFI SECURITIES LLC; STIFEL, NICOLAUS & COMPANY, INCORPORATED; WEDBUSH SECURITIES INC.; BLAYLOCK VAN, LLC; DREXEL HAMILTON, LLC; LOOP CAPITAL MARKETS LLC; R. SEELAUS & CO., LLC; SAMUEL A. RAMIREZ & COMPANY, INC.; STERN BROTHERS & CO.; TIGRESS FINANCIAL PARTNERS LLC

                                  Defendants.

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................................................1

ARGUMENT.......................................................................................................................................3

I. PLAINTIFF FAILS TO PLEAD SECURITIES FRAUD UNDER SECTION 10(b).........................3

A. Plaintiff Is Unable to Plead Any False Statements.........................................................................3

    1. No Legal Authority Supports that Brand and Marketing Statements Were False.........................3

        a) Opposition Fails to Confront the Reality of Post-IPO Growth..............................................4

        b) Plaintiff Is Unable to Plead Brand Awareness Decline with Particularity.............................5

        c) No Duty to Disclose Disputed Findings from a Single Advertising Campaign......................6

        d) Opposition Ignores that Brand and Marketing Statements Are Protected Opinions..............7

    2. Plaintiff Cannot Cast Subjective Optimism about Growth as Fraudulent Forecasting.................8

        a) Plaintiff Fails to Allege Facts that Instacart's Growth Prospects Were "Contingent on Brand Recognition and Reputation".....................................................................................8

        b) Plaintiff Invents Yet Another Disclosure Duty.......................................................................8

B. The Opposition Does Not Save Deficient Scienter Allegations.......................................................9

    1. Plaintiff Deemphasizes Section 10(b) Claim Because He Cannot Plead Scienter........................9

    2. CW-3 Still Cannot Speak to Defendants' Knowledge...............................................................10

    3. Opposition Persists in False Insider Trading Allegations...........................................................11

C. Plaintiff Fails to Rescue Loss Causation.....................................................................................12

    1. Even Under Plaintiff's Incorrect Standard, Plaintiff Fails to Allege Corrective Disclosures Revealed Any New Information to the Market.....................................................................12

    2. Plaintiff Confuses Instacart's Advertising Business Segment with Instacart's Advertising of Its Own Brand......................................................................................................................13

    3. Stock Price Rebound Negates Any Loss.................................................................................13

II. SECTION 11 CLAIMS FAIL EVEN UNDER LOWER PLEADING STANDARD.......................14

A. Section 11 Claim Sounds in Fraud.............................................................................................14

B. Disputed Results of Single Campaign Cannot Indicate a Trend....................................................14

C. Plaintiff Cannot Articulate How Brand Awareness Is a Quantifiable Metric..................................14

## TABLE OF AUTHORITIES

**Case**                                                         **Page**

*In re Accuray, Inc. Sec. Litig.*,
757 F. Supp. 2d 936 (N.D. Cal. 2010) ……………………………………………………….5

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ……….….……………………….…………………………10, 15

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) ………………………………………………...……………13

*Azar v. Yelp, Inc.*,
2018 U.S. Dist. LEXIS 200769 (N.D. Cal. Nov. 27, 2018) …………………………….……9

*Borteanu v. Nikola Corp.*,
2023 U.S. Dist. LEXIS 237035 (D. Ariz. Dec. 8, 2023) ……………….…....……………..10

*Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*,
22 F.4th 1 (1st Cir. 2021) ……………………….…………….……………………………10

*In re Facebook, Inc. Sec. Litig.*,
87 F.4th 934 (9th Cir. 2023) …………………………………………………….………….12

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
97 F.4th 1171 (9th Cir. 2024) …………………………………………...……………12, 13

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) ……………………………………………………….....3, 8

*Golubowski v. Robinhood Mkts., Inc.*,
2023 U.S. Dist LEXIS 23163 (N.D. Cal. Feb. 10, 2023) ……………………………….….14

*Hammer v. Frontier Fin. Corp.*,
2011 U.S. Dist. LEXIS 169245 (W.D. Wash. Sept. 7, 2011) ………………………………...9

*In re Impax Labs., Inc., Sec. Litig.*,
2007 U.S. Dist. LEXIS 723 (N.D. Cal. Jan. 3, 2007) …………………………………………13

*Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*,
45 F.4th 1236 (10th Cir. 2022) ……………………………………………………...….11

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
818 F.3d 85 (2d Cir. 2016) …………………………………………………….…………11

*Irving Fireman's Relief & Ret. Fund v. Uber Techs., Inc.*,
998 F.3d 387 (9th Cir. 2021) …………………………………………………..12

*Ishita Das v. Unity Software, Inc.*,
2024 U.S. Dist. LEXIS 46439 (N.D. Cal. Mar. 15, 2024) ………….……...…………….…..5

**Page**

*Jedrzeczyk v. Skillz, Inc.*,
2024 U.S. App. LEXIS 9123 (9th Cir. 2024) ……………………………………..…………6

*Kar v. Patel*,
2023 U.S. Dist. LEXIS 219582 (N.D. Cal. Oct. 12, 2023) …………………………………10

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ……………………………………………………...…….7

*Lopes v. Fitbit, Inc.*,
2020 U.S. Dist. LEXIS 52187 (N.D. Cal. Mar. 23, 2020) …………………….…………...11

*In re Lyft Inc. Sec. Litig.*,
484 F. Supp. 3d 758 (N.D. Cal. 2020) ……………………………………………….………9

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ……………………………………………………….....13

*Mulderrig v. Amyris, Inc.*,
492 F. Supp. 3d 999 (N.D. Cal. 2020) ………………………………………………….……9

*Mulligan v. Impax Labs, Inc.*,
36 F. Supp. 3d 942 (N.D. Cal. 2014) ………………………………………….....…………15

*In re Nektar Therapeutics*,
2020 U.S. Dist. LEXIS 122715 (N.D. Cal. July 13, 2020) …………………………………13

*In re Nektar Therapeutics Sec. Litig.*,
34 F.4th 828 (9th Cir. 2022) ……………………………………………………….………9

*In re Netflix, Inc. Sec. Litig.*,
2005 U.S. Dist. LEXIS 18765 (N.D. Cal. June 28, 2005) ………………………………...4

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
780 Fed. Appx. 480 (9th Cir. 2019) …………………………………………….………....9

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) …………………………………………………………………….....7

*In re On24 Sec. Litig.*,
2023 U.S. Dist. LEXIS 203132 (N.D. Cal. July 7, 2023) …………………….…………6, 15

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) …………………………………………………………7

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) …………..……………………………………………...6, 7

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) …………………………………………………………7

**Page**

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) …………...……………………………………………...6, 7

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) …………………………………………………………7, 15

*In re Restoration Robotics, Inc. Sec. Litig.*,
417 F. Supp. 3d 1242 (N.D. Cal. 2019) ……………………………………….…………2, 14

*Rodriguez v. Gigamon Inc.*,
325 F. Supp. 3d 1041 (N.D. Cal. 2018) …………………………………………...….…9

*Rok v. Identiv, Inc.*,
2017 U.S. Dist. LEXIS 1019 (N.D. Cal. Jan. 4, 2017) …………………………………..13

*Sakkal v. Anaplan, Inc.*,
557 F. Supp. 3d 988 (N.D. Cal. 2021) …………………………………….…………....8

*Schueneman v. Arena Pharms., Inc.*,
840 F.3d 698 (9th Cir. 2016) …………………………………………………...…..7

*So. Ferry LP v. Killinger*,
542 F.3d 776 (9th Cir. 2008) …………………………………...……………...…10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)…..…………………………………………………………..10

*Warshaw v. Xoma Corp.*,
74 F.3d 955 (9th Cir. 1996) …………………………………………………...….…9

*Webb v. SolarCity Corp.*
884 F.3d 844 (9th Cir. 2018) ………………………….…………………………...….…5

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
29 F.4th 611 (9th Cir. 2022) ……………………………………………..……1, 2, 6, 7

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) …………………………………………………...…7, 13

*Wong v. Arlo Techs., Inc.*,
2019 U.S. Dist. LEXIS 226546 (N.D. Cal. Dec. 19, 2019) ………………………...……14

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) …………………………………………………….…5, 10

**TABLE OF ABBREVIATIONS**

| Abbreviation | Definition |
|---|---|
| Amended Complaint or ¶ | Plaintiffs' First Amended Complaint for Violations of the Federal Securities Laws, filed September 17, 2024 (ECF No. 55) |
| Ex. | Exhibit |
| Exchange Act Defendants | Maplebear Inc. d/b/a Instacart, Fidji Simo, Nick Giovanni |
| GTV | Gross Transaction Value |
| Instacart | Maplebear Inc. d/b/a Instacart |
| Instacart Defendants | Maplebear Inc. d/b/a Instacart, Fidji Simo, Nick Giovanni, Alan Ramsay, Apoorva Mehta, Jeffrey Jordan, Meredith Kopit Levien, Barry McCarthy, Michael Moritz, Lily Sarafan, Frank Slootman, Daniel Sundheim |
| Motion | Instacart Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, filed October 29, 2024 (ECF No. 84) |
| Opposition or Opp. | Plaintiff's Opposition to Defendants' Motion to Dismiss, filed December 10, 2024 (ECF No. 99) |
| PSLRA | Private Securities Litigation Reform Act of 1995, 15 U.S.C. 78u-4 *et seq.* |

Emphasis is added unless otherwise noted. Certain quotation marks, alteration marks, citations, and emphases have been omitted.

**INTRODUCTION**

Despite filing a securities fraud suit alleging material misstatements in Instacart's IPO, the Opposition hardly quotes any actual disclosures, let alone any supposed misstatements. This is because neither the facts, nor the law, support Plaintiff's claim that Instacart misled shareholders by omitting purported "declining brand awareness and loss of market share." Opp. at 15. Without support, Plaintiff uses his Opposition to rewrite disclosures, invent law, and ignore the overwhelming facts negating his theories. Plaintiff only reinforces his inability to plead any element of his claim.

**Plaintiff Cannot Plead Falsity of Challenged Statements**. The Opposition doubles down on Plaintiff's conjecture that, at its IPO, Instacart was experiencing declining brand awareness that contradicted optimistic statements about its growth prospects. That theory—based on one advertising campaign—is baseless: Plaintiff is unable to refute that Instacart has experienced year-over-year growth in GTV, orders, and revenue *every quarter since its IPO*.

| | GTV | Orders | Total Revenue |
|---|---|---|---|
| **Instacart's Year-Over-Year Growth Since IPO**[1] | | | |
| **Q3 2023** | $7,494 million (+6%) | 66.2 million (+4%) | $764 million (+14%) |
| **Q4 2023** | $7,891 million (+7%) | 70.1 million (+5%) | $803 million (+6%) |
| **Q1 2024** | $8,319 million (+11%) | 72.8 million (+9%) | $820 million (+8%) |
| **Q2 2024** | $8,194 million (+10%) | 70.8 million (+7%) | $823 million (+15%) |
| **Q3 2024** | $8,303 million (+11%) | 72.9 million (+10%) | $852 million (+12%) |

Even if Plaintiff had pleaded particularized facts that Instacart's brand was declining at the time of the IPO (which he did not), he fails to establish as a matter of law a duty to disclose that information. Securities laws do not require companies to "offer an instantaneous update of every internal development" even if "a reasonable investor might consider [it] material." *Weston Fam. P'ship LLLP v.*

---

[1] See Ex. 15; Ex. 16 at 12; Ex. 17 at 10, 14; Ex. 18; Ex. 22 at 6.

*Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022). Disclosure is required only if an omission would render some affirmative statement false. *Id.* at 621. Tellingly, the Opposition hardly quotes *any* affirmative statements by Instacart. Instead, the Opposition:

- Suggests that Instacart projected future performance in its IPO materials. It did not, nor was it required to do so. To suggest otherwise is inconsistent with FRCP 11.

- Creates imaginary laws. In Plaintiff's world, the securities laws require Instacart to disclose everything from its internal forecasting processes to the contested efficacy of a single, limited time advertising campaign pre-dating the IPO. Not true. *Id.* at 620.

- Manufactures a "trend" of Instacart's supposed "declining" brand awareness in an effort to fabricate an Item 303 violation. Opp. at 16–17. But one or two data points from well before the IPO—even if they were accurate—do not a trend make. *See In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1263–64 (N.D. Cal. 2019).

**Plaintiff Fails to Plead Scienter.** Plaintiff persists in his insider trading theory, refusing to acknowledge that all stock sales by Exchange Act Defendants were non-discretionary. Nor does CW-3's single alleged interaction with Ms. Simo about a year-old ad campaign speak to her state of mind about Instacart's growth potential at its IPO. Plaintiff cannot rescue his securities fraud claim by disguising it under the cloak of Section 11. As Plaintiff admits, his claims are the same. Opp. at 7.

**Plaintiff Fails to Plead Loss Causation.** Plaintiff seeks to eliminate the element of loss causation from his pleading burden. Why? Because he cannot plead it. Instacart's stock price rebound negates any loss.



Jan 8, 2025                                                                                              2

Plaintiff cannot base a claim on rewriting securities laws or asking the Court to ignore Instacart's performance. Defendants submit that the Court should dismiss the Complaint with prejudice.

## ARGUMENT

### I.     PLAINTIFF FAILS TO PLEAD SECURITIES FRAUD UNDER SECTION 10(b)

Plaintiff cannot avoid "the dual heightened pleading requirements" of Rule 9(b) and the PSLRA. MTD at 5. Plaintiff must plead with particularity (1) a "material misrepresentation or omission," (2) "scienter," and (3) "loss causation." *See id.* Unable to plead **any** element of a securities fraud claim, Plaintiff attempts to lower his pleading burden by referencing Section 11 of the Securities Act. Opp. at 9 (citing *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 766 (9th Cir. 2023)).[3] That does not solve his problem: Plaintiff's Section 11 claim sounds in fraud, and still fails even under Section 11's lower standard. *See infra* at 14–15.

### A.     Plaintiff Is Unable to Plead Any False Statements

#### 1.     No Legal Authority Supports that Brand and Marketing Statements Were False

The Opposition suffers from four flaws. First, as a matter of common-sense, Instacart's post-IPO performance belies Plaintiff's claims that its brand awareness was declining. Second, Plaintiff's conclusory allegations about Instacart's brand strength are insufficiently pleaded. Third, the

---

[2] *See* Ex. 23.

[3] Plaintiff's citation to *Forescout*'s Rule 12(b)(6) plausibility standard is misleading. Opp. at 9. There, the Ninth Circuit confirmed that the plausibility standard is appropriate "***[e]xcept where a heightened pleading standard applies***[,]" as the PSLRA requires here. *Forescout*, 63 F.4th at 763.

federal securities laws do not require Instacart to disclose surveys assessing the year-old Lizzo campaign's efficacy. Finally, the Ninth Circuit treats the challenged statements as inactionable opinions.

### a) Opposition Fails to Confront the Reality of Post-IPO Growth

Plaintiff's theory is that Instacart's IPO materials omitted that its "brand strength was declining" and it was "losing market share." Opp. at 2. Plaintiff pleads no facts—let alone "adverse material facts[,]" *Id.* at 13—to contradict any of Instacart's disclosures. Plaintiff nowhere pleads that Instacart had ***not*** "demonstrated [its] ability to help [its] retail partners drive strong growth[,]" ¶183, or that it did ***not*** "have a significant opportunity to increase [its] brand awareness[,]" ¶181. Those statements are true. Even if Instacart's brand was somehow "declining," that does not contradict Instacart's benefits to its partners nor that it had an opportunity to further strengthen its brand. Instacart's post-IPO performance confirms that it took advantage of that opportunity. Instacart has experienced year-over-year growth in GTV, orders, *and* revenue every quarter since its IPO. *Supra* at 1; MTD at 5.

The rest of the Opposition's arguments also fall flat. Plaintiff is unable to dispute Instacart's growth, so he simply claims that the metrics by which Instacart judges its performance are wrong and "cherry-pick[ed]." Opp. at 11. Plaintiff, who has never run a company the size of Instacart, is entitled to his opinion, but he fails to present a metric other than GTV that would more accurately track Instacart's growth.[4] *See In re Netflix, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 18765, at *4, 16–17 (N.D. Cal. June 28, 2005) (dismissing complaint where "[p]laintiffs allege[d] that [how] Netflix calculated chum [sic] was improper" but "offer[ed] no authority . . . that their method is proper"). To the extent Plaintiff quibbles with the *amount* of Instacart's growth, Opp. at 3 ("GTV grew by *only* 20% in 2021"), Instacart disclosed that its early Pandemic-era growth was unlikely to continue. *See* MTD at 3–4.

Ultimately, Plaintiff throws all concrete metrics aside because they portray a healthy company with excellent growth. He instead asks the Court to believe CW-3's "version of events" that a single, 6-week advertising campaign pre-dating the IPO revealed that Instacart's brand was "declining." Opp. at 9. Plaintiff does not explain what it means for a brand to decline. Nor does he explain why a junior

---

[4] GTV is a standard financial metric used in the delivery industry, and beyond. *See, e.g.*, Ex. 24 at 5, 10–16; Ex. 25 at 2, 4; Ex. 26 at 1–4, 6, 8–9 (GTV disclosures of Just Eat Takeaway.com, Live Nation Entertainment, and RB Global, Inc., respectively).

INSTACART DEFS' REPLY ISO                     4
MOTION TO DISMISS
CASE NO. 5:24-cv-00465-EJD

employee's alleged disagreement with management negates Instacart's disclosures about its growth potential. Opportunities to improve a brand exist even if it is in decline—in fact, more so.

In sum, Instacart's post-IPO performance in no way contradicts its IPO disclosures.

### b) Plaintiff Is Unable to Plead Brand Awareness Decline with Particularity

The Opposition's deficiencies do not stop here. Plaintiff also fails to plead actual facts showing that Instacart's brand was declining. He does not establish his key confidential witness's credibility nor that the brand studies to which CW-3 purportedly speaks were significant.

**Plaintiff Cannot Defend His Source's Credibility.** CW-3 had no insight into the Registration Statement's creation: Plaintiff does not dispute that CW-3 left Instacart *six months* before the IPO. ¶¶58, 60; MTD at 8. He asserts that this temporal gap "strengthens" the allegations because Instacart must have been concurrently "preparing the [r]egistration [s]tatement." Opp. at 10. But CW-3 acknowledged that there "was a special team . . . for the IPO" and *CW-3 was not on it*. ¶¶204, 334; *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th Cir. 2009) (affirming dismissal where CWs with "secondhand information" were not employed during the time period).

Even if Instacart's IPO team received Brand Tracker reports, Plaintiff fails to articulate why the team would rely on year-old data to draft the final Registration Statement. Plaintiff's authority, *Hollin v. Scholastic Corp.*, is inapposite because, there, "[p]re-class data" concerning a 50 percent drop in orders from the prior year "[wa]s [directly] relevant" to the challenged statement that "trade sales remained constant from the prior year's strong second quarter performance." 252 F.3d 63, 70, 72 (2d Cir. 2001).[5] Here, CW-3's "unsubstantiated speculation" "do[es] not establish the falsity of the [challenged] statements[.]" *Ishita Das v. Unity Software, Inc.*, 2024 U.S. Dist. LEXIS 46439, at *24, 27 (N.D. Cal. Mar. 15, 2024) (Davila J.) (rejecting CW accounts mainly "occurr[ing] pre-Class period").

**Nor Can Plaintiff Plead What the Brand Studies Showed.** "[E]xplaining objectives and methodologies" of the Brand Tracker and Campaign Awareness Research study, Opp. at 10, is useless without identifying the underlying metrics used to assess *how* Instacart's brand was "growing in

---

[5] And *Webb v. SolarCity Corp.* supports *Defendants'* position. There, although the Court "considered" CW allegations that predated the class period, it affirmed dismissal of the case because those facts did "not support a strong inference of scienter." 884 F.3d 844, 851 n.1, 856 (9th Cir. 2018).

INSTACART DEFS' REPLY ISO
MOTION TO DISMISS
CASE NO. 5:24-cv-00465-EJD

5

people's minds." *Id.*; *see In re Accuray Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 943–44 (N.D. Cal. 2010) (dismissing § 10(b) claim where "CWs d[id] not offer any facts regarding specific contracts . . . in the reported backlog"). Indeed, CW-3, the source of the allegations, does not identify actual values used to determine brand strength, conceding it is unquantifiable. *See infra* at 14–15.

Plaintiff asserts that *In re On24, Inc. Securities Litigation* is inapposite because "the plaintiff in that case failed to demonstrate the materiality of the defendants' 'product[] decline' in advance of the IPO." Opp. at 11 (citing 2023 U.S. Dist. LEXIS 203132 (N.D. Cal. July 7, 2023)). In *On24*, the Court held that a CW's allegations of "customer churn" failed to "provide ***a factual foundation*** for [its] theory that demand for ON24's products declined to the point" that omissions were material. 2023 U.S. Dist. LEXIS 203132, at *27. But here, too, Plaintiff fails to plead a factual foundation for his claims: alleging an undefined "decline" in Instacart's brand awareness and "corresponding increase" in its competitors', Opp. at 11, sheds no light on what the decline is—let alone that it was material.

On this rickety factual edifice, Plaintiff attempts to build his case. But, even if well-pleaded, there is no cognizable claim for a simpler reason: the law does not require disclosure.

### c) No Duty to Disclose Disputed Findings from a Single Advertising Campaign

Even if Plaintiff pleaded with requisite particularity, he attempts to impose on Instacart a duty of disclosure that does not exist. *See* Opp. at 8. He repeats that Instacart was barred from "portraying [its] brand and marketing strategies as strengths" because a junior employee concluded, based on two surveys relating to a single, 6-week advertising campaign pre-dating the IPO by a year, that Instacart's brand was "declining." *Id.* But even crediting the junior employee's views, "companies do not have an obligation to offer an instantaneous update of every internal development" even if "a reasonable investor might consider [it] material." *Twitter*, 29 F.4th at 620; *see Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014) ("[w]e have expressly declined to require a rule of completeness for securities disclosures"). "A company must disclose a negative internal development ***only if its omission would make other statements materially misleading***." *Twitter*, 29 F.4th at 620. Plaintiff identifies no affirmative statements that would be misleading nor why.

In *Jedrzeczyk v. Skillz, Inc.*, for example, plaintiffs "failed to sufficiently allege facts demonstrating that Skillz misled investors about revenue streams by [omitting] declining downloads of

top games." 2024 U.S. App. LEXIS 9123, at *3–4 (9th Cir. 2024). The court held that, "even if download rates decline[d], aggregate downloads and revenue may [have] continue[d] to grow." *Id.* Here, Instacart's growth is not hypothetical. *See supra* at 1; *Intuitive Surgical*, 759 F.3d at 1061 ("statements [that] accurately reflect[ed] the company's growth" were not actionable). Thus, even assuming that the Lizzo campaign was considered a failure, Instacart simply had no "legal duty to disclose [that] to the investing public." *See Twitter*, 29 F.4th at 621; MTD at 7.[6]

### d) Opposition Ignores that Brand and Marketing Statements Are Protected Opinions

Plaintiff also fails to confront that Instacart's statements about its brand strength and marketing efforts' potential to drive growth are inactionable opinions.[7] *See* MTD at 7 (citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186–91 (2015)). Instead, without quoting the actual language of the challenged disclosures, he concludes that Instacart's statements "were clearly intended to, and did, reinforce for investors Instacart's supposed market dominance[.]" Opp. at 13. But Instacart's "***belie[f]*** [that] the strength of our brand enables us to attract customers to Instacart," ¶¶226, 356, mirrors those that the Ninth Circuit deems protected opinions. *See, e.g.*, *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014) (company's "belie[f]" that its "revenue growth is attributable to [its] comprehensive services" was inactionable); *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1196 (9th Cir. 2021) (statement that company was making "great progress" was inactionable absent allegations that it was making "no progress at all"). That expression of belief is not

---

[6] Plaintiff's cases concern pharmaceutical companies' failure to disclose clinical trial results that directly contradicted the challenged statements. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1010 (9th Cir. 2018) (statement touting "positive" results was misleading because the data was "unreliable"); *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 700, 707 (9th Cir. 2016) (statement that "animal studies supported [drug's] safety" was misleading because rats "were getting cancer").

[7] The same statements are protected by the bespeaks caution doctrine and the PSLRA's safe harbor for forward-looking statements. *See* MTD at 11 (citing *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141 (9th Cir. 2017)). Plaintiff's argument that "Instacart's loss of market and decline in brand awareness had already materialized[,]" Opp. at 14, is meritless because Plaintiff alleges neither. *See infra* at 8.

INSTACART DEFS' REPLY ISO                                7
MOTION TO DISMISS
CASE NO. 5:24-cv-00465-EJD

negated by the alleged failure of a single campaign—even assuming that Plaintiff had pleaded that fact with particularity, which he did not.

### 2. Plaintiff Cannot Cast Subjective Optimism about Growth as Fraudulent Forecasting

#### a) Plaintiff Fails to Allege Facts that Instacart's Growth Prospects Were "Contingent on Brand Recognition and Reputation"

Plaintiff insists—yet fails to plead—any particularized facts establishing that Instacart's internal forecasts were "contingent on brand recognition and reputation." Opp. at 14. At most, CW-1, 2, and 4's allegations suggest they disagreed with Instacart's internal growth targets and projection methods—in some cases, not even at the IPO. *See id.* at 15. This is insufficient "to establish a fact."[8] *Id.* And the few "facts" that Plaintiff *does* allege—that Instacart "set annual growth targets of between 15% and 20%," *id.* (citing ¶¶208–17)—have nothing to do with the challenged disclosures. *Sakkal v. Anaplan, Inc.*, 557 F. Supp. 3d 988, 999 (N.D. Cal. 2021) (dismissing complaint where "CW allegations [were] neither anchored in time nor tethered to any particular allegedly false or misleading statements").

#### b) Plaintiff Invents Yet Another Disclosure Duty

Moreover, contrary to Plaintiff's mischaracterization, Opp. at 14, Instacart did not forecast performance in its IPO materials, MTD at 13. Trying to recover from his own misstatement, Plaintiff now insists that Instacart "assumed a duty to disclose" its internal forecasting process because its growth prospects were "contingent on brand recognition and reputation." Opp. at 14. But Instacart's

---

[8] In *Forescout*, the Court simply acknowledged that courts typically refrain from "co-mingling" scienter and falsity inquiries, which Defendants have not done. 63 F.4th at 766.

INSTACART DEFS' REPLY ISO
MOTION TO DISMISS
CASE NO. 5:24-cv-00465-EJD

8

alleged forecasting processes "bear no connection to the substance of the statements themselves."[9] MTD at 12. For example, even if Instacart "set revenue goals based on its historical, astronomical growth[,]" ¶208, that would not contradict its statement that "[Instacart's] growth during [the pandemic] helped establish a business with much greater scale and much higher gross profit[,]" ¶185. "Without specific allegations to connect the dots, Plaintiffs' theory fails to plead securities fraud." *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 832 (9th Cir. 2022).[10]

**B.    The Opposition Does Not Save Deficient Scienter Allegations**

**1.    Plaintiff Deemphasizes Section 10(b) Claim Because He Cannot Plead Scienter**

Plaintiff's conclusory allegations fare no better when viewed "collectively," as he urges the Court to do. Opp. at 19. Although Plaintiff need not present a "smoking gun," he must raise a scienter inference that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent."

---

[9] In contrast, Plaintiff highlights cases where misstatements directly contradicted known information. *See Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 Fed. Appx. 480, 483 (9th Cir. 2019) (touting alarms' "real-time nature" despite most being delayed; *Warshaw v. Xoma Corp.*, 74 F.3d 955, 958 (9th Cir. 1996) (stating that drug approval was "imminent" where "no chance for timely [] approval"); *Azar v. Yelp, Inc.*, 2018 U.S. Dist. LEXIS 200769, at *8, 39 (N.D. Cal. Nov. 27, 2018) (touting "proven" ad model despite increased advertiser churn); *Rodriguez v. Gigamon Inc.*, 325 F. Supp. 3d 1041, 1051–53 (N.D. Cal. 2018) (touting "healthy backlog" that was "almost nonexistent"); *Hammer v. Frontier Fin. Corp.*, 2011 U.S. Dist. LEXIS 169245, at *23, 28 (W.D. Wash. Sept. 7, 2011) (stating that "'capital ratios remain strong'" despite "inadequate capital"); *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1023–24 (N.D. Cal. 2020) (describing internal controls as "remediating" when they "were deteriorating").

[10] Plaintiff also mischaracterizes *Lyft*, in which the court held that Lyft's statements touting its "brand reputation" were **not** misleading but "vague, generalized assertions of corporate optimism." *In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 765–66, 770 (N.D. Cal. 2020); Opp. at 16.

INSTACART DEFS' REPLY ISO                                              9
MOTION TO DISMISS
CASE NO. 5:24-cv-00465-EJD

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007).[11] Plaintiff fails to do so.[12]

### 2.    CW-3 Still Cannot Speak to Defendants' Knowledge

Plaintiff's Opposition retreats from allegations attributed to CW-1 and CW-2 and intensifies the focus on CW-3.[13] Opp. at 20. But this approach only highlights the banality of the allegations. CW-3 was *multiple* levels removed from the Individual Defendants, was unqualified to speak to their state of mind in CW-3's isolated marketing role, alleges only a single interaction with Defendant Simo regarding a single ad campaign well before the class period, and left Instacart *six months* before the IPO. MTD at 20; Opp. at 20.

*Alphabet* and *Nikola*, Plaintiff's main authorities, are easily distinguishable. *In re Alphabet, Inc. Securities Litigation* concerned a memo identifying a privacy bug on Google's social media platform and "warn[ing] [executives] of the consequences of disclosure." 1 F.4th 687, 706 (9th Cir. 2021). The *Nikola* plaintiff pleaded that the company was unable to produce its primary product, despite touting its expected revenue. 2023 U.S. Dist. LEXIS 237035, at *50. The purported decline of Instacart's "brand awareness," unlike the existence of a bug or a product's viability, is inherently subjective and indefinite. MTD at 20. CW-3 admits it was the "first time" the Brand Tracker study showed a decline and Ms. Simo "flatly refused to believe the results." ¶¶220, 300. Plaintiff ignores *Zucco*, in which the Ninth Circuit held that management questioning projections and their underlying assumptions is "far from the deliberate, conscious recklessness required" for scienter.[14] Here, the far more compelling conclusion is

---

[11] *Borteanu v. Nikola Corp.*, 2023 U.S. Dist. LEXIS 237035, at *49 (D. Ariz. Dec. 8, 2023) is inapposite. The Court held that "actual [information] access" is sufficient for a ***core operations theory*** only for "particular" allegations. *So. Ferry LP v. Killinger*, 542 F.3d 776, 785–86 (9th Cir. 2008).

[12] Plaintiff fails to address Defendants' core operations argument, or the CWs-1 and 2 allegations, and thus "concede[s]." *Kar v. Patel*, 2023 U.S. Dist. LEXIS 219582, at *7 (N.D. Cal. Oct. 12, 2023).

[13] Plaintiff does not even attempt to allege a fraudulent state of mind for Defendant Giovanni.

[14] In *Construction Industry & Laborers Joint Pension Trust v. Carbonite, Inc.*, plaintiffs alleged with particularity that defendant promoted its product but never confirmed that it worked. 22 F.4th 1, 9–11 (1st Cir. 2021). Here, Instacart's steady growth contradicts Plaintiff's theory. *See supra* at 4–5.

that Ms. Simo earnestly believed Instacart's statements about brand strength. MTD at 19–20. History proved her right.

### 3.    Opposition Persists in False Insider Trading Allegations

Unable to contest that every stock sale by Exchange Act Defendants was non-discretionary, MTD at 16–17, Plaintiff asserts that scienter need only be "***bolstered*** by the motive allegations . . . not ***dependent*** upon them." Opp. at 22. Plaintiff's hedging is unavailing. Because Plaintiff ignores the trades were non-discretionary, his motive allegations fail. MTD at 16.

As a distraction, Plaintiff points to stock sales by *non-parties*. Opp. at 21–22. Stock sales from individuals other than Exchange Act Defendants are ***irrelevant*** to scienter. *Lopes v. Fitbit, Inc.*, 2020 U.S. Dist. LEXIS 52187, at *34 (N.D. Cal. Mar. 23, 2020) (dismissing where "no allegation of improper stock sales by any ***individual defendant*** during the class period"). Even so, all sales were disclosed either in the Forms 4 or the Prospectus. Plaintiff cannot argue otherwise.[15]

Last, Plaintiff attempts to characterize an IPO as a sinister business practice. But courts have widely held that a "desire to raise capital is a generic motive held by all companies, and is therefore insufficient to establish scienter." MTD at 17. Moreover, the Prospectus disclosed that Instacart's IPO would provide liquidity for employees. *See id.* (citing disclosure that IPO would "allow employees to cash in their stock options").[16] Plaintiff's conclusory allegations that Instacart "conceal[ed] . . . declining 'brand awareness'" to provide a "favorable market into which they could launch the IPO and sell their shares" are unfounded. Opp. at 22. Had they been prescient—as Plaintiff seems to suggest—Defendants would have made more money selling their shares now than in the IPO. After all, Instacart's stock appreciated in value, making this possibly the strangest fraud case in history. *Infra* at 3.

---

[15] Apoorva Mehta made one sale on the day of the IPO, which was disclosed in the Prospectus.

[16] Plaintiff's reliance on *Indiana Public Retirement System v. Pluralsight, Inc.*, 45 F.4th 1236 (10th Cir. 2022) and *Indiana Public Retirement System v. SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016) is misplaced. In *SAIC*, the company explicitly omitted that it was facing a criminal investigation. 818 F.3d at 89. In *Pluralsight,* defendants repeatedly misstated its revenue. 45 F.4th at 1267.

INSTACART DEFS' REPLY ISO                              11
MOTION TO DISMISS
CASE NO. 5:24-cv-00465-EJD

## C.    Plaintiff Fails to Rescue Loss Causation

Plaintiff's Opposition seeks to lower the standard to plead loss causation. Opp. at 23 (citing a "flexible" "plausibility" standard). But his own authority confirms that Rule 9(b)'s "heightened 'particularity' requirement applies to **all elements** of a securities fraud action." *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1180–81 (9th Cir. 2024).

### 1.    Even Under Plaintiff's Incorrect Standard, Plaintiff Fails to Allege Corrective Disclosures Revealed Any New Information to the Market

Plaintiff claims that Defendants' loss causation arguments are "unsupported by facts," Opp. at 23, but cannot identify any "new fact[]" rendering "[D]efendant's prior statement false or misleading." *Genius Brands*, 97 F.4th at 1184. The closest Plaintiff comes is a reference to "negative reports" on "declining growth rates due to increased competition." Opp. at 23. Plaintiff assures that "analyst reports, news articles, and other types of information can all constitute corrective disclosures." *Id.* But the report's **medium** does not matter if its content is irrelevant: Plaintiff fails to explain what new information entered the market and contradicted Instacart's earlier statements. *See Irving Fireman's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 387, 409 (9th Cir. 2021) (affirming dismissal where plaintiff failed to "plead with particularity and distinguish among the various [] revelations"). Plaintiff's case is even weaker than *Uber*: here, there are not multiple revelations of new facts; Plaintiff fails to plead *any* new information contradicting Instacart's disclosures. *Id*.

The Ninth Circuit has held loss causation sufficiently pleaded, for example, when the press revealed Facebook's practice of allowing third-party applications to access users' data despite previous assurances otherwise. *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 957 (9th Cir. 2023). Or in *Genius Brands*, where a press release revealed that Genius misrepresented a "key business development" by retweeting articles insinuating that it would be acquired despite having no intention to do so. 97 F.4th at 1180–81. Here, Plaintiff does not deny that his cited reports discuss benign changes to financial metrics or risks that Instacart had previously disclosed. MTD at 22; *see also* ¶¶229, 241, 359, 373.[17] "[M]ere repackaging of already-public information . . . is [] insufficient to constitute a corrective disclosure." *In re Nektar Therapeutics*, 2020 U.S. Dist. LEXIS 122715, at *55 (N.D. Cal. July 13, 2020).

[17] Plaintiff misrepresents that "the Registration Statement did not properly disclose the [C]ompany's true outlook." Opp. at 23. Instacart's Registration Statement never showcased projections.

**2.  Plaintiff Confuses Instacart's Advertising Business Segment with Instacart's Advertising of Its Own Brand**

Although Plaintiff need not allege that the corrective disclosures "precisely mirror" the misrepresentation, Opp. at 24, courts will not draw inferences when "the match between the contents of the price-propping misrepresentation and the truth-revealing corrective disclosure is tenuous." *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 80 (2d Cir. 2023). Plaintiff's alleged corrective disclosures and false statements are the exact type of "mismatch" the *Goldman Sachs* court rejected. *Id.* at 81. Reports generally discussing competition, potentially slower growth, and advertising revenue are unrelated to Instacart's brand strength—the focus of the alleged misstatements. MTD at 23.

Plaintiff again undermines his claim by relying on *Genius Brands*, where the court dismissed a claim based on a far stronger match than Instacart's. 97 F.4th at 1184–85. The *Genius Brands* plaintiff alleged the company misleadingly promoted a celebrity investment via tweet, when he was only developing a show. *Id.* The "truth" was revealed when the company disclosed having compensated the celebrity but mentioned no investment. *Id.* The disclosure thus could not reveal the truth because "the tweet and the 10-Q sp[oke] to different things." *Id.* at 1184. Now, Plaintiff asks the Court to consider a claim far more abstract than *Genius Brands'* unsatisfactory disclosure.

**3.  Stock Price Rebound Negates Any Loss**

Last, the subsequent recovery of Instacart's stock price, by definition, fails to support any loss. *See In re Impax Labs., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 723, at *20 (N.D. Cal. Jan. 3, 2007) ("there [is] no loss . . . because the stock price increased after the truth was disclosed"); *Rok v. Identiv, Inc.*, 2017 U.S. Dist. LEXIS 1019, at *61 (N.D. Cal. Jan. 4, 2017) (dismissing where "stock price actually increased after the disclosure"). Where, as here, "a modest drop in the stock price coincides with the disclosure of certain news but then 'recover[s] very shortly after,'" courts dismiss allegations of loss causation. *Tesla*, 985 F.3d at 1197; *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d at 1064–65 (9th Cir. 2008). Not only has Instacart's stock recovered, ***it has continued to increase.*** *Supra* at 1–3. Following publication of the two reports Plaintiff cites, Instacart's stock dropped from $31.56 to $30.00 (its IPO price), and $29.69 to $26.96, respectively. When Plaintiff filed his Amended Complaint, Instacart was trading at $37.40. As of January 8, it is trading at $44.82. Ex. 23. There is no loss.

## II.    SECTION 11 CLAIMS FAIL EVEN UNDER LOWER PLEADING STANDARD

### A.    Section 11 Claim Sounds in Fraud

That the **Defendants** for the Sections 11 and 10(b) claims are not identical, Opp. at 7, is irrelevant to whether the Section 11 claims "sound in fraud." *See* MTD at 6. "Substantively similar" Section 11 claims "sound in fraud." *Wong v. Arlo Techs., Inc.*, 2019 U.S. Dist. LEXIS 226546, at *17–18 (N.D. Cal. Dec. 19, 2019). In this case, they are identical to the statements challenged under Section 10(b). Opp. at 7. Plaintiff's purported "additional scienter allegations only for Exchange Act claims" are based on those underlying the Section 11 claims. ¶388 (alleging that Ms. Simo and Mr. Giovanni "knew or, at a minimum, recklessly disregarded **the facts described above**"). Plaintiff thus cannot avoid Rule 9(b)'s heightened pleading standard.

### B.    Disputed Results of Single Campaign Cannot Indicate a Trend

Desperate to invent liability, Plaintiff seeks to convert the disputed results of a single advertising campaign into a "trend" requiring disclosure under Item 303. Opp. at 16–17. Plaintiff ignores that a trend necessarily cannot arise from an "isolated event" but must be an "observed pattern . . . accurately reflect[ing] persistent conditions of [Instacart's] business environment." *Restoration Robotics*, 417 F. at 1263 (holding that one instance of warehousing did not indicate a trend under Item 303); *Golubowski v. Robinhood Mkts., Inc.*, 2023 U.S. Dist LEXIS 23163, at *26 (N.D. Cal. Feb. 10, 2023) (holding that declining KPIs over two months failed to "reflect[] persistent conditions" to create Item 303 liability). Plaintiff alleges that CW-3 observed the alleged "decline" in brand awareness "**for the first time**" in Q3-2021 despite having "data for at least a full quarter" before the Lizzo campaign. ¶196; *see supra* at 10. Plaintiff fails to provide requisite "contextual allegations" establishing that any declines are "historically extraordinary and represent a present condition." *Robinhood Mkts.*, 2023 U.S. Dist LEXIS 23163, at *26.

### C.    Plaintiff Cannot Articulate How Brand Awareness Is a Quantifiable Metric

Even if the alleged surveys spanned years or studied multiple advertising campaigns, "brand" is too amorphous to indicate a trend under Item 303. *See* MTD at 10 (brand statements are not verifiable and thus inactionable). Plaintiff insists that this case requires additional factfinding because Instacart's statements about brand are "**premised on facts**." Opp. at 13. He merely points to unspecified "data," *id.*,

revealing even he cannot explain how a "brand" can "decline." As in *On24*, Plaintiff's challenge to statements about the potential for "brand marketing campaigns" to "drive increased [customer] engagement," ¶226, lacks any "factual foundation." *On24*, 2023 U.S. Dist. LEXIS 203132, at *32 (touting "significant opportunity" to increase customer engagement was "too vague to be actionable").

Plaintiff's cases, all of which concern quantifiable and "specific aspects of a company's operation[,]" highlight just how vague "brand" is. *In re Quality Sys.*, 865 F.3d 1130, 1144 (9th Cir. 2017) (disclosures concerning "prospective sales" contradicted by declining pipeline); *see also Mulligan v. Impax Labs, Inc.*, 36 F. Supp. 3d 942, 968 (N.D. Cal. 2014) (company disclosed it had "undertaken significant manufacturing and quality control changes" in response to an FDA warning, but had taken only a few discrete steps).[18] Ultimately, Plaintiff's preoccupation with Instacart's "brand" is a red herring to distract from the reality that Instacart's GTV is *growing*. *See supra* at 1.

## CONCLUSION

Plaintiff's failure to plead falsity and loss causation as to any of the challenged statements renders amendment futile and is each a sufficient ground to dismiss the entire Amended Complaint with prejudice. Plaintiff's failure to plead scienter is an additional, independent, ground for dismissing his Exchange Act claims with prejudice.

Dated: January 10, 2025

FRESHFIELDS US LLP

By: */s/ Boris Feldman*
     Boris Feldman

*Attorneys for Defendants MapleBear Inc. d/b/a Instacart, Fidji Simo, Nick Giovanni, Alan Ramsay, Apoorva Mehta, Jeffrey Jordan, Meredith Kopit Levien, Barry McCarthy, Michael Moritz, Lily Sarafan, Frank Slootman, and Daniel Sundheim*

---

[18] And in *Alphabet*, 1 F.4th at 708–09, the Ninth Circuit **affirmed** dismissal of plaintiff's challenge to Google's statement that it "was committed to protecting our users' data" because that statement did "not rise to the level of concrete description of the past and present" to be actionable.

INSTACART DEFS' REPLY ISO
MOTION TO DISMISS
CASE NO. 5:24-CV-00465-EJD

15